Good morning, Your Honor. Good morning. Jeff Dahl on behalf of Gregory Hill. Your Honor, this is not a typical ERISA disability case, in that it's not a denial of disability case, but rather it's a classification of how Mr. Hill's disability should have been classified. That is because the plan, as modified in 2007, allows players, former players who are vested in the retirement plan, if they are approved for Social Security disability benefits, then they are automatically awarded disability benefits under the plan. At the time your client went to the board with his claim, was he drawing NFL disability as well as Social Security disability? At the time that he went to the board with his claim, no, he wasn't. All right, so whenever the administrator awarded the non-NFL injuries that arise out of other causes, that was the first time he was ever awarded a benefit from the NFL? Yeah. Under the plan, there's a two-tier. The initial claims committee took in his Social Security award and automatically awarded him the category of inactive benefits, and then said, we're going to take this under review, and they sent him to an orthopedic physician at that time. And the orthopedic physician, Dr. Perry, looked at the reports but said that he's got some impairments related to his NFL career, but we don't think he's disabled. So the award of the non-inactive benefits was just perfunctory? It was. It was. We said we're going to pay you initially. The initial award was we haven't decided whether to classify these as football degenerative, meaning that his disability arose out of playing NFL. The other thing before us, then, is whether the administrator abused its discretion, his discretion or its discretion, in awarding and denying the NFL benefits, the, what do you call it, football benefits. The only thing that's in, no, what it was an abuse of discretion in awarding inactive benefits because inactive benefits requires evidence that he has some impairments unrelated to NFL. But that was automatic. Under the contract, he was automatically, you say it was perfunctory. That was an award to him. They don't even go with that. The question is whether nobody's claiming that the administrator abused his discretion by awarding inactive benefits. Initially. But we're claiming that he abused his discretion in its classification of benefits in the award, not in the initial award, but then the decision. And there were two decisions by the fiduciary, which is the retirement board, and we've alleged that the first decision misinterpreted the plan because it said that Mr. Hill's impairments were predominantly psychiatric impairments, but the only psychiatric evidence in the record is a 28-page report from Dr. Nathan, a psychiatrist, that says he has no psychiatric problems. But that sounds like it could be an argument that he wasn't entitled to any benefits at all. Well, that's right, but under the Social Security, and I agree, and that's what the plan and the fiduciary, the retirement board, essentially treated this case as if they treated cases where somebody filed without a Social Security award and said you're not entitled to benefits because we don't think you're disabled. But because he'd been awarded benefits by the Social Security administration, he was deemed disabled. And so the issue was how to class what the issue in this case was. But the only way for the NFL to challenge the Social Security administration's determination is to argue that he procured those benefits by fraud. Is that right? Yeah, it's a Taft-Hartley plan. There's four members of the six-member board would have to allege that he procured the Social Security disability benefit by fraud. And so absent those allegations, and then if the NFL decides to make that allegation, then it has to go forward with some proof, some evidence, and that connection and all of that. So the NFL could then just decide, while it may be a little suspicious, we're not going to challenge it on the fraud grounds. But then when they make that determination, they're sitting there with this determination that there is a disability, whether or not they like it or agree with it. So in the face of that determination, then you're telling me they have to decide to award one of the two categories of benefits. Is that right? That's correct. And in this instance, they say, well, there's some evidence of some psychiatric problems, so we're going to go ahead and award the first-tier benefits. Let's say first-tier, the smaller amount. That's what they said the first time around. All right. And our allegations was that first-tier. So I guess all I'm saying is if they make a determination that they want to fight that award, the Social Security disability determination, they have to argue fraud. That's correct, Your Honor. And they did not do so in this case. All right. Yeah. And so there's two. This case involves both planned interpretation, but primarily there was lack of concrete evidence to support the award of inactive benefits because there is no evidence of any kind other than he was given a 5% rating of gastroesophageal or GERD for reflex disease by Dr. Green. But that's the only evidence in the record, the only concrete evidence in the record. Well, I may be trying to speed things, but let's get to where we need to go. All right. Because if I'm sitting there on that board, I guess my feeling is I'm stuck with the Social Security disability finding. So they said he's disabled. I don't know about trying to prove fraud, so I let it go, and I've got to give him some benefits. And you're telling me he's entitled to more than the inactive. He's entitled to the football injury-related benefits, right? That's what you're saying? That's correct, Your Honor. And in that connection, then, isn't the burden on the player to offer up proof that his permanent and total disability is related to football injuries? Well, it is, Your Honor, and he submitted evidence of that. But our review here is based upon the board's decisions and whether they're supported by substantial evidence. Well, the board doesn't have to prove that the injuries are not related, though. He has to prove that they are. Well, under the plan interpretation, in order for the fiduciary to award inactive benefits, there has to be evidence that there's a disability that does not arise from playing in the NFL. They have to have that evidence in order to award inactive benefits. The plan does not say under the... I thought you told me that it was perfunctory. With the Disability Initial Claims Committee, the first time around, it was perfunctory. But it was not perfunctory by the... And I thought your question, Your Honor, was just initially whether it was perfunctory, and it was. Well, then you're saying on the second decision, they could have withdrawn the earlier decision that awarded him the benefits perfunctory. Well, the initial decision was just made by the Initial Claims Committee. Then it always, once Mr. Hill asked for an appeal, it goes to a different governing body, the board, and it was the board that made the two decisions that were challenging here, not the initial decision by the Initial Claims Committee. But the board on appeal had no authority of any kind to withdraw the award of unrelated or inactive benefits. No, but the decision by the Initial Claims Committee, which is in the record, said, we're withholding the decision. The inactive committee awarded it, but it didn't say that we've decided that this is the category you get. It said, we're withholding that until you go to see Dr. Perry, and then once they saw Dr. Perry, then the Initial Claims Committee came back and awarded inactive benefits and said that it's not related to NFL football. Well, that's not the way I understood it. Maybe I'm missing something. Yeah. Because it seemed when I read it, you know, there could have been a fight on the first determination, as Judge Graves alluded. You know, there is no fight. You know, he's deemed to be disabled. Now, when it gets to the second round, I thought I read the language of the plan to be that the plan was entitled to request an IME, an independent medical exam, because the player is asserting the football-related injury. But I still thought, as you asked earlier, the default position is just the inactive benefits. I mean, that's just what happened based on initial determination. When we get to the second level, something in this record had to show that the injuries were related to football play, and that's the part that got fuzzy to me. But then when it gets to the IME, Dr. Apple, and I can't think of the other doctor's name, determined that there was no proof of football-related injuries, either from the record or based on their exam, et cetera, et cetera. And so Judge Jolly asked you, well, isn't it here for us to determine whether there was an abuse of discretion by the plan administrator on that call? Now, you say that that's not true? That's not the way this is teed up for us? The way it's teed up is to decide on the two decisions by the board, not the initial decision by the initial claims committee. The initial – just so I understand, there were four different decisions, the initial claims committee. Why is the initial decision in play? I don't understand. It's not. I thought the only issue was whether he gets more benefits, i.e., football-related injuries, or he's stuck at the default position of the disability that nobody seems to be contesting. Well, there is no default position to award inactive benefits. The plan does not say if you are denied, if there is substantial evidence to deny football degenerative benefits, you will be awarded inactive benefits. Well, I understand. Let me put it this way. The way I understand it, the worst he can come out from this appeal is that he has the benefits that have been determined based on the disability finding that was made below. Is that right? That's correct. The best he can come out from this is that we agree he should have got more. Correct. We're in agreement on that? Yes, we are. All right. So in the argument here about the more part? It is. Okay. Then let's not keep sliding back on the earlier determination nobody is fighting at. All right. So then help me understand, what is in the record that makes the nexus between his medical problems and football? Is it just the fact that he played six years and he was running back and take judicial notice he got bumped? What is it that you're saying is the core of how we get to the more? Well, there's Dr. Meyer's report, which is in the record. Orthopedic surgeon says he was disabled entirely by NFL football. Dr. Lynn Wilson said he was 25% impaired only by football. The third surgeon, Dr. Einbund, orthopedic surgeon, said he was impaired 40% by playing football. None of these doctors said he had any impairments unrelated to football. The pain management physician. Counsel, don't we have just as many experts saying they can't find anything related, any injuries that are related to football? I mean, weren't there other doctors offering different opinions? It is a tradition. And the board's in a position where it gets to consider all these different positions. We're talking about a guy who didn't even go to a doctor. He retired in 2000. He didn't go to a doctor until 06, 07. Is that right, for any reason? Well, I don't know that he did or not, but I think it's in the record that says he did. He did not? Yeah. And when he went to a doctor, the reason he went to a doctor was to get evaluated to see whether or not he qualified for some disability. Not because he was complaining about pain or aches or anything else. Isn't that right? I think that's right, Your Honor. All right. Thank you. Well, don't give up on your dollars because your client's looking for you to show up with more. I just want to know so we can bore you out. I just want you to tell me in a declarative sentence, what is it that entitles him to the football-related injury? We've got two sets. Don't tell me about the doctors. We've read it. You've got Dr. Meyer, but you've also got the IME. What is the missing piece here? Well, the missing piece is that there is no evidence in the record, there's no concrete evidence, that he should have been awarded inactive benefits. There's no evidence that any of these impairments. Counsel, I could agree with that, but I'd probably go further and say there's no concrete evidence that he should have been awarded any disability benefits. If I adopt that view. Right. You could say that, but it was abuse of discretion to award inactive benefits in this case because there is no evidence that he had. The only evidence is he had, the only dispute is the level of his impairments and how much he was impaired by playing in the NFL. All right. That's fine. I just want to make sure I understand the argument you're making. All right. So it can be said we didn't understand what you were arguing to us, but I think we're clear. Thank you. You've reserved time for rebuttal. I apologize for that. No, no, no. That's why we have you arguing, so we can get it clear. Mr. Junk, you must have been kidded about that name. I get that a lot, Your Honor. This time isn't going to count against me, is it, if I talk about my psychologist and psychiatrist and the time we spent together going over my last name? Your voice up, please. Yes, will do. It's a pleasure to be here. Thank you. Michael Junk, on behalf of the Burt Bell Plan, the defendants, and the appellees here. Just to be crystal clear, and I don't want to beat this dead horse, Mr. Hill was going to get total and permanent disability benefits under our plan, precisely because he was totally and permanently disabled because of the Social Security determination. So the default position, and here's the way the plan is structured. There's four levels of T&P, as we call them, total and permanent disability benefits, T&P benefits. Two levels are reserved for basically active football players. Those didn't apply to Mr. Hill, who's retired from football. The remaining two levels are football degenerative or inactive, and the distinction there between those two is football causation. And the idea, of course, is to give players who are totally and permanently disabled due to NFL football injuries a higher level of benefits. So causation is the distinction, and it's the burden of the player to prove that he is T&P, totally and permanently disabled, due to NFL football. If he does, he gets football degenerative benefits. If he does not, in this instance, he automatically receives inactive football benefits, and that's where we are. And am I right that the only way for you to determine that he doesn't get any benefit at all, in this instance, because he has a Social Security disability determination, the only way for you to do that would be to attack, collaterally attack the determination made by Social Security. Is that right? That is absolutely right, and that did not happen here. All right. The whole way along, there were two options, football degenerative or inactive benefits, and it was a question between the two. This is a straightforward abusive discretion case. It's like every other abusive discretion case out there. Counsel's attempt to paint this with a brush is something different because it's a classification decision. I don't follow it. The issue here was, was Mr. Hill totally and permanently disabled due to football, and that question went up to our board, the Bell Board. They looked at the record, and they had two orthopedic specialists retained by the plan, Dr. Apple, and I believe it was Dr. Perry, examine this player. And keep in mind, the interesting thing here, too, is that Mr. Hill had cabined this into, I am TNP disabled due to orthopedic injuries. Don't look at anything else. Orthopedics. So that's what the board looked at, and both of our orthopedic specialists came back and said, quite frankly, and to just distill it, there's no way this guy is totally and permanently disabled by orthopedic injuries. That's part of the evidence before our board. And if he's not totally and permanently disabled because of football, those orthopedic-related football injuries, then he can't possibly get football degenerative benefits, and he automatically gets inactive. And that's the process. And under the abusive discretion standard here in the Fifth Circuit, the question for this panel is, was that process, was that decision so irrational, so detached from common sense and the facts before the board that it should be overturned? And I think the answer to that would have to be no. There were some questions from the panel to Mr. Dahl about, and I just want to clear this up, it's not enough that Mr. Hill has an impairment related to football. He may have a pinky sprain, and I don't mean to diminish his condition in any way, but he may have an ACL injury that's nagged him throughout the years. And doctors may submit reports finding that there's a percentage of disablement or a percentage of impairment assigned to an old ACL injury, but that's not the question. Having a disablement is not the question. He must show that he is totally and permanently disabled by those football-related injuries. And I just wanted to clear that up. I think this is a straightforward case, classic abuse of discretion, and unless the panel has any questions, I will be happy to sit down. All right. Thank you, sir. I think we have your argument. Back to you, Mr. Dahl, for any rebuttal if you wish to make it. Yes, Your Honor. What I'd ask the Court to do in my rebuttal is that I'd ask the Court to focus on the plan, the plan itself, and the interpretation of inactive benefits and the plain language of inactive benefits and then review the record and see if there's any evidence to support an award of inactive benefits. Counsel, you keep talking about that. I don't know why you want to try to undo the award of inactive benefits. I don't think we can do that. You can't. You can't. But the question is whether there was substantial evidence. But the lack of evidence to support a finding of inactive benefits doesn't equal evidence to support a finding of football degenerative benefits. That's why I can't get with you. No, but if it's an abuse of discretion to award inactive benefits, and it was recently decided in January, the George v. Reliant Standard case, in which this Court specifically said, you know, the review is whether or not there's substantial evidence to support what they've decided. And they said, we won't go back. We'll assume that Mr. George provided substantial evidence to support his ongoing benefits. It was a question of whether after 24 months his benefits should have changed. But that case applies to this particular case, as does the Shadler case, in the sense that, no, you can't undo inactive benefits and decide that he shouldn't have been awarded benefits at all. It's the administrator, and it's their decision that this Court must focus on and decide whether there was concrete evidence within the record to support that decision. And our argument is it's very unreasonable, or it was unreasonable for the Board. Nothing in the plan says that a player should automatically if a player is deemed disabled by the Social Security Administration, nothing in the plan says that he automatically should be given inactive benefits. There's no automatic grant of inactive benefits unless he provides sufficient proof for the Board that he should be awarded football degenerative benefits. This plan says that the disability must arise from something other than playing in the NFL, and we're arguing that there's no concrete evidence to support that. The only evidence in the record shows that it is football-related. And there can be as much argument as there is from Dr. Perry, Dr. Havehold, the two NFL consultants, and then all the doctors that Mr. Hill submitted. In a 1-2-3, what is the evidence you're saying that's there? Well, again, it's Dr. Meyer. His, I think, 18- to 20-page report that specifically says orthopedic injuries from the NFL was the cause of his disability, and that's within the record. And it's Dr. Einbund. Another orthopedic says he's 40% impaired by football. The third orthopedic, Dr. Wilson, says 25% from football. Dr. Zevaray said 18% from chronic pain. Dr. Nudelman, the neurologist, said 17% from a neurology perspective. But all of this was to football. There wasn't any, none of these doctors, and neither Dr. Apple nor Dr. Perry, the two NFL consultants that he was sent to, none of these doctors said he had impairments unrelated to football. So they don't fit. I mean, the plan has a problem. The plan, when it was written, and nobody thought of the fact that, okay, if somebody's approved for Social Security, not only the plan but the board, the board was required to gather, if they're going to award inactive benefits, they're required to gather evidence that, in fact, he should have been awarded inactive benefits. Why didn't they just look at the Social Security award, which was on various and sundry things and didn't pin down any football injuries? That's right. So that in itself shows it was from other disabilities. Well, that's not a reasonable inference because the Social Security may look at that same evidence that I just recited from Dr. Meyer and the other orthopedics and decide that's sufficient to be awarded Social Security. So the disagreement can be between the board and the, you can't logically infer that because he was awarded Social Security benefits, he has impairments unrelated to football. That's not a proper inference because there's no evidence to support that inference that he had impairments unrelated to football. I thought it was because, I mean, they cited the reasons that they were awarding him the benefits and it had, they said it had memory problems, blackouts, balance, headaches, joint problems, fatigue, sleep. He said his disability began at such and such a date. The evidence shows the early stages of so and so. It doesn't say a thing about football. Well, that was his complaint, complaints to the Social Security, but as the magistrate judge who decided this said, Social Security, the decision, we don't know why the Social Security granted him disability. They don't know. Oh, we say it right here. Well, no, that's just the complaints. All that says is those are the complaints made by Mr. Hill. The following information was used to decide this claim, and that is his evidence. They took his statement as evidence. Well, the board... Nothing was said in there about football. Okay, but if I may, the board never followed that Social Security evidence and never said, you know, this court's review is what the board said and that's what it's limited to. All right, thank you, Mr. Dahl. I think we have your argument. Thank you both, counsel, for briefing and argument in the case.